KAREN P. HEWITT
United States Attorney
STEVEN DE SALVO
Assistant U.S. Attorney
California State Bar No. 199904
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-6330
Facsimile: (619) 557-7032
steven.desalvo@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No.  08CR1436-LAB |
| Plaintiff, | Date: August 18, 2008<br>Time: 2:00 a.m.<br>Before Honorable Larry A. Burns<br>Courtroom 3 |
| v. | |
| CUAUHTLAHTOUAC HERNANDEZ (3), | UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO |
| Defendant. | |

(1)    SEVER MR. HERNANDEZ'S TRIAL FROM CO-DEFENDANT ESPINOZA'S TRIAL;
(2)    EXCLUDE EVIDENCE OF MR. HERNANDEZ'S OTHER CRIMES, WRONGS, OR ACS UNDER FED. R. EVID. 404(B);
(3)    EXCLUDE EVIDENCE OF CO-DEFENDANT ESPINOZA'S OTHER CRIMES, WRONG, OR ACTS UNDER FED. R. EVID 404(B)
(4)    EXCLUDE EVIDENCE OF INCRIMNNATORY STATEMENTS OF CO-DEFENDANTS SMITH AND BARRAZA UNDER CRAWFORD V. WASHINGTON;
(5)    EXCLUDE EXPERT TESTIMONY OR, IN THE ALTERNATIVE, HOLD A KUMHO HEARING; AND
(6)    ADMIT EVIDENCE OF CO-DEFENDANTS SMITH, BARRAZA, AND ESPINOZA'S THIRD PARTY CULPABILITY

1

2

TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES

3

4

5

6

7

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Steven De Salvo, Assistant United States Attorney, and hereby files its opposition to Defendant's motions in limine in the above-captioned case.  Said memorandum is based upon the files and records of this case.

8

**I**

**STATEMENT OF THE CASE**

9

10

11

12

13

14

15

On April 30, 2008, a grand jury sitting in the Southern District of California returned a three-count indictment charging Defendants Dominick Smith ("Smith"), Robert Barraza ("Barraza"), Cuauhtlahtouac Hernandez ("Hernandez"), and Isaac Espinoza ("Espinoza") (collectively, "Defendants") with transportation of illegal aliens and aiding and abetting.  On May 6, 2008, Defendants were arraigned on the Indictment.  Defendants Barraza and Smith have pled guilty; trial is set for the remaining defendants, Espinoza and Hernandez, on August 19, 2008.

16

.

**II**

**STATEMENT OF FACTS**

17

18

19

20

21

22

23

24

25

26

27

On April 6, 2008, Supervisory Border Patrol Agent J. Dinise was performing anti-smuggling duties near Alpine, California. This area is located approximately 7 miles west and 12 miles north of the Tecate Port of Entry.  Agent Dinise was operating an unmarked agency vehicle.  At approximately 8:50 p.m., Agent Dinise observed two vehicles traveling eastbound on Interstate 8. The first vehicle was a blue Ford Escort; the second vehicle was a green Dodge Ram 2500. Agent Dinise observed the two vehicles traveling in close proximity to one another, making the same lane changes, and it appeared as though the Dodge Ram was riding in tandem with the Ford Escort.  Based on his background, training, and experience, Agent Dinise concluded that the Ford Escort a scout vehicle and that the Dodge Ram was intended to be a load vehicle.  The two occupants of the Ford Escort were later identified as Defendant Hernandez, who was driving, and Defendant Espinoza, who was the front seat passenger.

28

Border Patrol Agent Joseph Remenar, who was in a separate unmarked vehicle, assisted in the

surveillance. Both agents continued surveillance of the two vehicles as they approached the Willows Road Exit on Interstate 8. At the Willows Road Exit, both vehicles exited the Interstate towards the Viejas Casino, which is a common meeting place for smugglers to load contraband. The two vehicles approached the main entrance of the Viejas Casino and parked together. Agent Dinise observed two occupants exit from each vehicle. While outside, the occupants spoke to each other for approximately ten minutes before re-entering their vehicles. The vehicles then exited the casino.

Border Patrol Agent Benjamin Blanchard, also in a separate vehicle, assisted in the surveillance of the vehicles after they left the casino. Agent Blanchard observed the Ford driving just ahead of the Dodge. The Dodge, however, passed the Ford as it continued eastbound on Interstate 8. Agent Blanchard passed the Ford and continued surveillance on the Dodge as Agents Dinise and Remenar continued surveillance on the Ford. Both vehicles continued driving eastbound in close proximity until the Dodge began accelerating approximately two miles west of the Buckman Springs Road Exit of Interstate 8. Agent Blanchard eventually lost track of the speeding Dodge.

Agents Dinise and Remenar continued following the Ford. The Ford drove eastbound on Interstate 8 until it exited at Mountain Springs Road. As Agent Remenar drove eastbound on the interstate, Agent Dinise exited at Mountain Springs and saw the Ford immediately turn around and head westbound on Interstate 8 – a maneuver that Agent Dinise believed was an attempt to scout the smuggling route for the Dodge. The Ford continued westbound on Interstate 8, exited at the Jacumba Exit, and pulled into the Shell Gas Station located just off of the Interstate. Both Hernandez and Espinoza exited the Ford and entered the convenience store located there. Hernandez and Espinoza then returned to their vehicle and re-entered the westbound lanes of Interstate 8. Agents Dinise and Blanchard continued to conduct surveillance on the vehicle as it traveled westbound, until it exited at the Crestwood Road Exit. The Ford turned into the parking lot of the Golden Acorn Casino and parked outside of the convenience store, near the gas pumps. Agents Dinise and Blanchard approached the vehicle and identified themselves as Border Patrol Agents.

Meanwhile, Agent Remenar drove westbound on Interstate 8 towards the Jacumba Exit and noticed a pickup truck on the shoulder of the highway. Agent Remenar recognized the truck as the same Dodge Ram 2500 that had been driving in tandem with the Ford Escort. As Agent Remenar

08CR1436-LAB

approached the pickup, the pickup re-entered the westbound lanes of the Interstate. A few hundred yards later, the pickup then pulled onto the shoulder of the highway again. This area of the Interstate, which is less than two miles from the border, is a well- documented alien smuggling location.  Agent Remenar passed the Dodge and temporarily lost sight of the activity on the shoulder.

In addition, Border Patrol Agents assigned to the Boulevard, California Border Patrol Station had been tracking a group of undocumented aliens that were headed towards the same area where the Dodge had pulled over to the shoulder.  Agent Remenar believed that the Dodge had just loaded a group of undocumented aliens and relayed his observations to Border Patrol Agent Francisco Rivera.  Agent Rivera was operating a marked Border Patrol pursuit sedan with fully functional emergency lights and audible siren.  Agent Rivera, who had been waiting at the Jacumba Exit, entered onto the westbound lanes of Interstate 8 and saw the Dodge traveling westbound on Interstate 8 as it passed the McCain Valley Bridge, located approximately 1.5 miles east of the Ribbonwood Road Exit. Agent Rivera requested additional marked units to assist.  Agent Rivera initiated his emergency lights and audible siren in attempt to stop the Dodge.  The Dodge failed to yield to Agent Rivera's marked agency vehicle and attempted to flee, exiting Interstate 8 at the Kitchen Creek Road Exit.  Border Patrol agents successfully deployed tire deflation devices at the exit.  With tires spiked, the Dodge moved erratically along the off-ramp, then accelerated and drove through the stop sign.  The Dodge re-entered the interstate westbound, then cut across the median and traveled the wrong way against eastbound traffic for 100 yards before crashing at the shoulder.  Defendants Smith and Barrazza fled from the truck and were eventually apprehended.

Five aliens were apprehended next to the Dodge.  Another 12 aliens were apprehended approximately 50 yards south of the Dodge attempting to flee. All of the aliens admitted to being citizens and nationals of Mexico. When asked to present any immigration documents that would allow them to enter into the United States legally, all of the aliens stated that they had no such documents. All of the aliens were then placed under arrest for being present in the United States not in possession of any valid immigration documents.

Agents detained three material witnesses: Clemente Morales-Chaparro, Roberto Aguilar-Peez, and Rogelio Oplea-Mendoza.  Each stated that they were citizens and nationals of Mexico illegally

1  present in the United States. They admitted to entering the United States illegally. They all stated that

2  they were going to pay between $1,800.00 to $2500.00 to be smuggled into the United States.  None

3  of the aliens made statements directly implicating Hernandez or Espinoza.

4          Agents apprehended cell phone records from Barraza, who was in the Dodge, and Espinoza,

5  who was in the Ford.  The cell phone records show that Espinoza called Barraza, and Barraza called

6  Espinoza, before the vehicles were seen driving in tandem.  In addition, Agent Remenar recognized

7  Isaac Espinoza as the same person he had observed driving the green Dodge pickup truck three days

8  earlier.  Agents arrested both Hernandez and Espinoza.

9          Defendant Hernandez, after being advised of his Miranda rights, stated that he had left his house

10  in Chula Vista to go the Golden Acorn Casino and that his friend Espinoza joined him.  He contended

11  that he drove to the casino without making any stops.  He denied traveling with anyone else or any other

12  vehicles.  When confronted with the fact that agents had observed him and Espinoza stopping and

13  meeting with the other co-defendants, Hernandez changed his story, stating that he got lost and had to

14  call his girlfriend for directions.  However, he continued to deny that he followed the Dodge or spoke

15  to anyone in the Dodge.

16          Defendant Espinoza, after being advised of his Miranda rights, stated that he and his friend,

17  Hernandez, went from his house in Chula Vista to the casino.  He refused to make any additional

18  statements.

19                                              **III**

20                   ***IN-LIMINE* MOTIONS OF THE UNITED STATES**

21          **A.       THE MOTION TO SEVER IS MOOT**

22          Espinoza has pleaded guilty; accordingly, the motion to sever is moot.

23

24          **B.       THE MOTION TO EXCLUDE OTHER CRIMES UNDER FED. R. EVID.
                        404(B) SHOULD BE DENIED**

25          "Other crimes" evidence of Defendant's prior involvement in an ongoing alien smuggling

26  conspiracy, as a driver for the alien smuggling organization, is relevant under Rule 404(b) to show

27  planning, intent, and knowledge of the alien smuggling in this case.  Other evidence of Defendant's

28  2004 arrest as a passenger in a vehicle smuggling aliens is similarly relevant.

1      This evidence meets the Ninth Circuit's requirements for introducing evidence under Rule

2  404(b).  First, the evidence proves a material issue in the case – Defendant's intent to aid and abet the

3  transportation of aliens.  Second, the prior crime – in which Defendant drove vehicles involved in

4  transporting aliens – is identical to the crime charged here.  Third, the evidence is supported by

5  testimony from a co-conspirator who had personal knowledge of Defendant's involvement.  Fourth, the

6  witness is expected to testify that Defendant's prior crimes occurred in 2006, which is not remote in

7  time.  Accordingly, this evidence is highly probative and outweighs the danger of unfair prejudice.  See

8  United States v. Montgomery, 150 F.3d 983, 1000 (9th Cir. 1998).

9      **C.    THE COURT SHOULD DENY THE MOTION TO EXCLUDE EVIDENCE
         THAT ESPINOZA DROVE THE LOAD VEHICLE 3 DAYS PREVIOUSLY**

10
11      The government's theory of the case is that all of the co-defendants not only aided and abetted

12  each other, but were each part of a conspiracy (though uncharged in this indictment) to transport aliens.

13  Specifically, the theory is that defendants Hernandez and Espinoza (who were in the Ford vehicle)

14  conspired with defendants Smith and Barraza (who were in the green Dodge pickup truck) to smuggle

15  the aliens, and that Hernandez and Espinoza specifically acted as scouts for load vehicle, the green

16  Dodge pickup truck.  Thus, evidence of any prior connection between the occupants of the Ford vehicle

17  and the occupants of the Dodge vehicle, and any prior connection of a defendant with either vehicle,

18  is highly probative evidence.  Indeed, it is the essence of the government's case.

19      In this case, one of the arresting Border Patrol agents will testify that he witnessed Espinoza –

20  who was Hernandez's passenger – driving the same green Dodge pickup only 3 days previously.  There

21  will also be evidence that Espinoza telephoned Barraza, the passenger in the green Dodge pickup, while

22  the vehicles were traveling in tandem.  This is highly probative evidence of knowledge, planning, and

23  coordination among the defendants.  Defendant, however, seeks to exclude the evidence that Espinoza

24  drove the green Dodge, arguing that the probative value of this evidence is "slim." Defendant is wrong.

25  To the contrary, this evidence is highly probative.  The fact that it might help to establish Defendant's

26  guilt does not establish that it is prejudicial; the very purpose of probative evidence is to establish guilt.

27  The question is whether it is unfairly prejudicial.  It is not.

28      As the Ninth Circuit has explained, "[e]vidence of coordination between the defendants is

convincing circumstantial evidence of an agreement. Factors that a court may consider in analyzing co-defendants' coordinated activity include a close association between the co-defendants, frequent contacts, and a commonality of time and goals." United States v. Ortega, 203 F.3d 675, 683 (9th Cir. 2000). In this case, the evidence of coordination obviously satisfies these factors – it establishes a close association between Espinoza and the green Dodge, and between Espinoza and Barraza, the passenger in the green Dodge, and, by reasonable inference, a connection to Hernandez, who was driving in the same car with Espinoza at the time that Ford and the Dodge were observed traveling in tandem. In contrast to this probative value, Defendant can not establish any unfair prejudice. He can only point to the fact that the jury might rely on this evidence in convicting him. But that only states the obvious; the risk of conviction is, of course, a consequence of probative evidence.

### D.     EXCLUSION OF CO-DEFENDANT'S STATEMENTS

The United States does not intend at this time to introduce statements of co-Defendants at trial.

### E.     THE MOTION TO EXCLUDE EXPERT TESTIMONY SHOULD BE DENIED

The Court should deny Defendant's motion to exclude expert testimony, because the United States has given reasonable notice of the testimony. The United States gave notice to Defendant two weeks before trial that the United States expects to present expert testimony by a Border Patrol agent that the tandem driving by the two vehicles in this case is consistent with the use of a "load vehicle" and "scout vehicle" commonly used in the smuggling of aliens. The agent will also testify about other ways in which in which the load and scout vehicles were driven and their significance to carrying out the smuggling in this case. The agent has testified in federal court on this topic previously. Court should admit this expert testimony.

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. It is within the sound discretion of the trial judge to determine whether or not expert testimony would assist in understanding the facts at issue. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. An expert may

1  provide opinion testimony even if it embraces an ultimate issue to be decided by the trier-of-fact.  Fed.

2  R. Evid. 704.  Defendant has failed to establish that a <u>Kumho</u> hearing is necessary.

3      **F.    EVIDENCE OF CULPABILITY OF SMITH, BARRAZA, AND ESPINOZA SHOULD <u>BE ADMITTED</u>**

4

5  _____The United States does not oppose Defendant's motion to introduce evidence of guilty pleas

6  entered by co-defendant Smith, Barraza, and Espinoza.  Defendant Hernandez and the government both

   agree that the co-defendants are culpable parties.

7

8                                            **IV**

9                                      **<u>CONCLUSION</u>**

10      For the reasons set forth above, the United States respectfully requests that the Court grant

    its motions in limine.

11

12      DATED: August 11, 2008

13                                               Respectfully submitted,

14                                               KAREN P. HEWITT
                                                 United States Attorney

15                                               /s/ Steven De Salvo

16                                               STEVEN DE SALVO
                                                 Assistant U.S. Attorney

17

18

19

20

21

22

23

24

25

26

27

28

                                              8                              08CR1436-LAB

1

2

3                           UNITED STATES DISTRICT COURT

4                          SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,            )        Criminal Case No. 08CR1436-LAB
5                                    )
         Plaintiff,                  )
6                                    )
         v.                          )        CERTIFICATE OF SERVICE
7                                    )
                                     )
8    CUAUHTLAHTOUAC HERNANDEZ (3),   )
                                     )
9            Defendant.              )
                                     )
10   _____)

11       IT IS HEREBY CERTIFIED THAT:

12       I, STEVEN DE SALVO, am a citizen of the United States and am at least eighteen years of
age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

13       I am not a party to the above-entitled action.  I have caused service of **GOVERNMENT'S
RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE** on the
14   following parties by electronically filing the foregoing with the Clerk of the District Court using its
ECF System, which electronically notifies them.

15

16       Kurt Hermansen

17       I hereby certify that I have caused to be mailed the foregoing, by the United States Postal
Service, to the following non-ECF participants on this case:

18       None

19   the last known address, at which place there is delivery service of mail from the United States
Postal Service.

20

21       I declare under penalty of perjury that the foregoing is true and correct.

22       Executed on August 11, 2008.

23

24                                           /s/ *Steven De Salvo*

25                                           STEVEN DE SALVO

26

27

28

                                                                              08CR1436-LAB